IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
STACY TRIMBLE,                  )
                                )
        Plaintiff,              )
                                )
    v.                          )
                                )    CIVIL ACTION NO.
HYUNDAI MOTOR                   )    2:25cv235-MHT
MANUFACTURING OF ALABAMA,       )       (WO)
LLC,                            )
                                )
        Defendant.              )
```

OPINION

Plaintiff Stacy Trimble brings this employment-discrimination lawsuit against defendant Hyundai Motor Manufacturing of Alabama, LLC claiming that he was not promoted because of his race, in violation of 42 U.S.C. § 1981.[1]  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).  Before the court is Hyundai's motion for summary judgment.  For the reasons below, the motion will be granted.

---

1. Trimble initially also brought a retaliation claim, but he has since expressly abandoned that claim. Pl.'s Br. Opp'n (Doc. 50) at 2 n.1.

## I.   LEGAL STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in favor of that party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is appropriate.  *Id.* at 587.

## II.  FACTUAL BACKGROUND

The facts, taken in the light most favorable to Trimble, are as follows.

Hyundai is a company with several departments, and each department has the following corporate ladder.  At the first rung of the ladder are 'team members,' who are

assigned to work in teams of about 6-to-8 in a department. Each team is supervised by a 'team leader,' the position on the second rung of the ladder.  There are two positions on the third rung: 'group leaders' and 'specialists.' Group leaders oversee a group of teams, including the team leaders of those teams, in a specific area, such as the chassis area.  Specialists, as their name implies, specialize in a particular job, for example, purchasing or quality control.  They operate more independently, and, unlike many of Hyundai's other positions--which are often blue-collar assembly line jobs with late hours or night shifts--specialist positions are often white-collar jobs with a 9:00 a.m. to 5:00 p.m. schedule.

The final three rungs on the ladder involve junior and senior management positions.  First, 'assistant managers' oversee an entire area of a department and directly supervise specialists and group leaders. Second, 'mangers' supervise the assistant managers and oversee an area of a department.  Third and finally, the 'Head of a Department' oversees the managers and

3

supervises an entire department, for example, the General Assembly Department.

Hyundai has formal multi-step processes for employees seeking to climb the corporate ladder. Relevant here is the following process for promotions to assistant manager or below. First, when a position opens, the company creates an online post on its Career Opportunity Program portal; eligible employees may apply to that position through that post. Second, once the application submission period ends, the Human Resources Department screens applications and weeds out employees who are ineligible for the posted position. Third, the remaining applicants "are required to respond to a questionnaire about their experience and skills or to take an assessment--depending upon the position for which they are applying." Fletcher Decl. (Doc. 43-20) ¶4. Fourth, a group of applicants with a sufficiently high questionnaire score are chosen to be interviewed by a panel. The panel includes at least one representative from Human Resources and one from the Hiring Department.

**4**

After the interview, the panel fills out a matrix that grades each candidate based on a combination of factors including the applicant's interview performance, work history, work performance, and qualifications. Fifth, that matrix is given to the Hiring Department, which makes a recommendation from an even smaller list of applicants "whose final [matrix score] is above an established threshold." *Id.* ¶6. Sixth and finally, the Hiring Department's recommendation is sent to Human Resources for approval.

Trimble, who is Black, was hired as a team member in 2004 in Hyundai's car manufacturing plant in Montgomery, Alabama. In 2008, he was promoted to team leader in the Predelivery Inspection Department and, in 2019, to group leader. Two years later, he was transferred to the General Assembly Department.

Trimble contends that, during his years at Hyundai, he "observed a larger number of Blacks in [assistant management] positions in general assembly, which is a [department] more focused on physical labor," Pl.'s Br.

5

Opp'n (Doc. 50) at 14, and that this pattern diverges from other departments where he observed that more non-Black employees are promoted to assistant manager. He also alleges that he observed a similar pattern across departments where non-Black employees were promoted to specialist positions more often than Black employees.

Trimble contends that his own experience in the promotion process fits with that racialized pattern of promotion. From December 2018 to December 2022, he applied to five assistant manager positions and four specialist positions but was denied a promotion each time. Instead, Hyundai selected non-Black employees for seven out of the nine positions.

### III. TRIMBLE'S FAILURE-TO-PROMOTE CLAIM

Trimble's sole claim is that Hyundai failed to promote him because of his race, in violation of 42 U.S.C. § 1981. "Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."

6

*Ferrill v. Parker Grp.*, 168 F.3d 468, 472 (11th Cir. 1999). A plaintiff may establish racial discrimination by amassing a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," which approach is just a rearticulation of the summary-judgment standard. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946-47 (11th Cir. 2023) (internal quotation omitted). Therefore, to survive summary judgment Trimble must provide enough evidence for a reasonable juror to conclude that it was more likely than not that "race was a but-for cause" of Hyundai's failure to promote him. *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media*, 589 U.S. 327, 333 (2020). *See also Ossmann v. Meredith Corp.*, 82 F.4th 1007, 1014 (11th Cir. 2023). That is, he must show that if he were not Black, he would have been promoted.

To begin, Trimble asserts that Hyundai has a pattern of racial discrimination in its promotion process. One of the ways that a plaintiff may prove race

7

discrimination is by providing statistical or anecdotal evidence that he was discriminated against as part of a larger pattern or practice of racial discrimination. *See Jenkins v. Nell*, 26 F.4th 1243, 1250-51 (11th Cir. 2022). To prove a claim of race discrimination based on pattern or practice evidence, a plaintiff must provide evidence that his employer repeatedly treated employees of one race better than those of another race. *See id.* In other words, Trimble must provide some admissible statistical or anecdotal evidence that Hyundai's non-Black employees were repeatedly promoted over similarly or more qualified Black employees. *See*, *e.g.*, *id.*; *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir. 1991); *Ingram v. Hyundai Motor Mfg. of Ala., LLC*, No. 2:22-cv-666-MHT, 2025 WL 1139123, at *4-5 (M.D. Ala. Apr. 17, 2025) (Thompson, J.).

Trimble contends that Hyundai had a pattern of promoting more Black employees to assistant manager positions in the labor-intensive General Assembly Department. He asserts that this contrasts with

8

non-Black employees who were promoted to less labor-intensive positions, such as assistant manager positions in other departments or specialist positions in any of the departments, including the General Assembly Department. He further asserts that across *all* departments, the company had a pattern of promoting thinly credentialed or unqualified non-Black candidates, over highly qualified Black candidates. In essence, he argues that the company had a pattern of using its Black employees as physical laborers while non-Black employees received cushy desk jobs. He submits that the company's failure to promote him was part of that alleged discriminatory pattern.

The problem is that Trimble offers no evidence to back up his allegations of a pattern of racial discrimination. He has not provided employee files, resumes, or job applications (outside of those for which he and two other employees applied). Nor has he produced demographic data about the employees in Hyundai's various departments or who applied to the specialist or

leadership positions.  The only supporting evidence is
Trimble's own beliefs.  But "[a] mere belief of the
existence of a fact is not evidence of that fact."
*Ingram*, 2025 WL 1139123, at *5.

Trimble suggests that his observations based on many
years of working at Hyundai should count.  He contends
that, although he does not have evidence of the
credentials of specific candidates, the court should at
least consider his general observations that he has seen
more non-Black people promoted than Black people.  Yet,
even if the court were to credit these observations, such
general observations, "without an analytic foundation,
are virtually meaningless."  *Am. Honda*, 939 F.2d at 952.
"To say that very few black[ people] have been selected
by [Hyundai] does not say a great deal about [its]
practices unless we know how many black[ people] applied
and failed and compare that to the success rate of equally
qualified [non-Black] applicants."  *Id*.

Still, Trimble contends that, even if Hyundai did
not have a pattern or practice of discrimination against

10

Black employees generally, the company specifically did not promote him because of his race.  He contends that for the four years before he filed suit against the company, he applied nine times for a promotion and was denied each time.  He submits that despite having similar qualifications to the chosen applicants, in seven out of the nine times he applied, the company chose non-Black employees over him.

The problem with Trimble's second theory is that he has not rebutted the reasons that Hyundai gave for its selections.  An employer may refuse to promote an employee "for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019).  And, so, when an employer gives a legitimate, nondiscriminatory reason for its decision, "the employee must confront the employer's seemingly legitimate

reason ... 'head on and rebut it.'"    *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1206 (11th Cir. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)).    But Trimble has not rebutted Hyundai's reasons, and, therefore, he has not established a claim of race discrimination.

For starters, although Trimble applied to nine positions, he concedes that he was ineligible to apply for six of them; and he does not argue that the eligibility criteria were discriminatory.  So, while he says his claim is about nine positions, it is really about only three.

Hyundai had four openings for those three positions, and for each opening it selected a non-Black applicant. The company gave legitimate, nondiscriminatory reasons for its selections.  First, it asserts that it selected Travis Wyatt for the single opening for assistant manager of Quality Assurance "because of his extensive knowledge and experience troubleshooting Powertrain systems and his experience with Quality Assurance systems and tools."

12

Def.'s Br. (Doc. 44) ¶18.  Second, it contends that Soyun Lee was selected for the single opening for assistant manager in Engine Support because of her good interview answers, relevant work experience, and "familiarity with the issues the department faces and potential solutions." *Id.* ¶19.  Finally, for the two openings for assistant manager in Welding, the company selected Jeremy Lawrence and Shane Ruxton.  It explains that "Lawrence was selected based upon his leadership experience, process engineering background, as well as his understanding of the welding processes, new model launch process and welding and dimensional control principles."  *Id.* ¶20. And the company submits that "Ruxton was selected because of his experience leading project level activities, including design and implementation, as well as his understanding of process control, dimensional control and process standardization."  *Id.*

While Trimble makes two arguments in response, neither rebuts Hyundai's reasons for its selections.

First, Trimble argues that Hyundai did not give legitimate, nondiscriminatory reasons for its selections. He asserts that it did not give reasons for why *he* was *not* selected; it only gave reasons for why *other* employees *were* selected. He is mistaken; as when the company gave its reasons for selecting the chosen candidates, with those reasons it clearly also gave legitimate, nondiscriminatory reasons for why he was not selected.[2] *See Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1341-42 (11th Cir. 2000) (finding that an employer gave a legitimate, nondiscriminatory reason for its selection, when it gave a reason for why another employee was selected), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003).

---

2. In a transparent attempt to backfill a scarce initial brief, Trimble's attorney filed an unprompted supplemental brief after oral argument, which cited *Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160 (11th Cir. 2010), as support for his assertion. The arguments in this brief are due to be rejected as untimely. Yet even if they were considered, it would make no difference. *Brown* does not establish that providing a legitimate, nondiscriminatory reason for why a candidate *was* selected is inadequate to provide a reason for why another candidate *was not* selected.

Second, Trimble contends that, for the Welding and
Engine Production Control positions, Hyundai's reasons
were pretextual because he scored similarly or slightly
below the chosen candidates on several criteria in the
decision-making matrix.  But this argument does not
establish pretext.  For one, the company's stated reasons
were based on qualitative assessments of the candidates,
not just their matrix scores.  In fact, for three out of
the four openings, the company did not select the
candidate with the highest overall matrix score.

Even if the matrix scores were the basis for
Hyundai's decision, Trimble's similar scores on some
criteria that make up the scores, standing alone, would
not have been enough to show pretext.    In
failure-to-promote cases, "a plaintiff cannot prove
pretext by simply arguing or even by showing that he was
better qualified than the [applicant] who received the
position he coveted."  *Id.* at 1339.  Rather, if he seeks
to prove pretext solely by comparing the qualifications
of applicants, "[he] must show that the disparities

between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006)). Yet Trimble simply asserts that he scored similarly or slightly below the chosen applicants in some matrix criteria, not that he was so superior in qualifications "that no reasonable person, in the exercise of impartial judgment, could have chosen" those selected. *Id.* Indeed, both overall, and in most individual matrix criteria, he scored worse than all the chosen candidates.

## IV. CONCLUSION

In conclusion, no reasonable factfinder could find, based on the evidence before the court, that Trimble was

**16**

denied a promotion because of his race.  Summary judgment

will, therefore, be entered in favor of Hyundai.

An appropriate judgment will be entered.

DONE, this the 20th day of June, 2025.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

17